SILBERMAN, Judge.
 

 K.D., the unmarried biological father of N.M., seeks review of the final summary judgment terminating his parental rights based on his failure to file a claim with the Putative Father Registry and a pledge of commitment to N.M. We reverse because Gift of Life Adoptions, Inc., (“GLA”) did not provide K.D. timely notice of and opportunity to preserve his parental rights in this case.
 

 N.M. was born on June 14, 2005, and N.M.’s birth certificate does not name a father. N.M. lived with his mother until she voluntarily surrendered her parental rights on April 16, 2008, and placed N.M. in GLA’s custody for adoption. The mother identified K.D. as N.M.’s biological father in this process, but she did not provide his address or contact information.
 

 GLA filed its petition for termination of parental rights pending adoption on April 22, 2008. GLA located K.D. in a county jail in Oklahoma and served him with notice of the termination petition on May 2, 2008. Although that notice is not in the record, the parties do not dispute that it informed K.D. that a petition for termination of his parental rights pending adoption had been filed and a hearing had been scheduled. The notice informed K.D. that failure to file a written response or appear at the hearing constitutes grounds for termination. The notice also informed K.D. that he must comply with the following provisions or he would surrender his rights to notice of any proceedings regarding
 
 *1245
 
 N.M. and he would be deemed to consent to adoption:
 

 FURTHER, UNDER SECTION 63.062(2)(B)(2), YOU ARE HEREBY FURTHER NOTIFIED THAT WITHIN THIRTY (30) DAYS AFTER SERVICE OF THIS NOTICE UPON YOU, IF YOU DESIRE TO CONTEST THE BIRTH MOTHER’S ADOPTION PLAN:
 

 1. YOU MUST EXECUTE AND FILE WITH THE COURT AN AFFIDAVIT STATING THAT YOU ARE
 
 PERSONALLY
 
 FULLY ABLE AND WILLING TO TAKE RESPONSIBILITY FOR THE CHILD, SETTING FORTH YOUR PLANS FOR CARE OF THE CHILD, AND AGREEING TO A COURT ORDER OF CHILD SUPPORT AND A CONTRIBUTION TO THE PAYMENT OF LIVING AND MEDICAL EXPENSES INCURRED FOR THE MOTHER’S PREGNANCY AND THE CHILD’S BIRTH IN ACCORDANCE WITH YOUR ABILITY TO PAY. THE PINELLAS COUNTY COURT IS LOCATED AT; 315 COURT STREET, CLEARWATER, FLORIDA 33756.
 

 2. YOU MUST ALSO FILE A CLAIM OF PATERNITY FORM WITH THE OFFICE OF VITAL STATISTICS OF THE DEPARTMENT OF HEALTH. YOU MAY OBTAIN THIS FORM THROUGH LOCAL OFFICES OF THE DEPARTMENT OF HEALTH, OFFICE OF VITAL STATISTICS, DEPARTMENT OF CHILDREN AND FAMILIES, THE INTERNET WEBSITES FOR THESE AGENCIES, AND THE OFFICES OF THE CLERKS OF THE CIRCUIT COURT IN THE STATE OF FLORIDA. THE CLAIM OF PATERNITY FORM MUST BE SUBMITTED TO THE OFFICE OF VITAL STATISTICS, WHOSE ADDRESS IS VITAL STATISTICS, ATTENTION: ADOPTION UNIT, P.O. BOX 210, JACKSONVILLE, FLORIDA 32231.
 

 On May 5, 2008, K.D. authored a five-page response to the petition from jail. K.D. asserted that he had no knowledge that N.M. existed but stated that he could be the child’s biological father based on the child’s date of birth. K.D. acknowledged that he was facing a potential sentence of up to twenty-four months in prison for uttering a counterfeit instrument, but he asserted that he and his mother wanted to be involved in N.M.’s life. K.D. requested that counsel be appointed to represent him, that a paternity test be conducted, and that the circumstances of the surrender of the child be explained to his mother on his behalf.
 

 K.D. provided a DNA sample in June 2008, which resulted in confirmed paternity. On August 21, 2008, K.D. again wrote to the trial court, inquiring as to whether counsel had been appointed. K.D. also expressed concern about N.M.’s well-being and the nature of the circumstances that led to his being placed in GLA’s custody for adoption. K.D. stated, “I cannot endeavor to explain the feeling of reading a paper that tells you that you are the father of a 3 year old son ... that his mother has just given him up for adoption ... and then ... asking you to sign away your rights to him as if it were a bill of sale and you were transferring title to a car or boat.”
 

 On September 9, 2008, GLA served on K.D. an amended notice of petition to terminate parental rights pending adoption. Although this notice is also not in the record, it appears that it contained substantially the same information as the previous notice. The court appointed K.D. counsel on September 11, 2008. K.D., through counsel, subsequently obtained
 
 *1246
 
 the proper claim of paternity form, completed it, had it notarized at the jail, and mailed it to the Office of Vital Statistics. However, the Office of Vital Statistics denied the application as procedurally barred because a termination action was already pending.
 

 On November 10, 2008, GLA filed a motion for summary judgment against K.D. in the termination action. The circuit court determined that, because K.D. failed to file a claim of paternity form with the Office of Vital Statistics or a response containing a pledge of commitment to N.M as required by section 63.062(2), Florida Statutes (2007), GLA was not required to procure his consent to the termination of his parental rights. The court entered an order granting summary judgment and terminating K.D.’s parental rights.
 

 K.D. raises five issues on appeal. First, K.D. argues that he was unable to file a claim of paternity form and comply with section 63.062(2) because the circuit court delayed too long in appointing counsel. Second, K.D. argues that his hand-written response to the petition complied with the statutory requirements. Third, K.D. argues that the notice of the petition was insufficient to inform him of his obligations. Fourth, K.D. argues that GLA should have provided him notice of his obligations to preserve his rights before filing the petition for termination of parental rights. Finally, K.D. argues that the court erred in resolving factual disputes about his compliance with the notice requirements in a, summary judgment proceeding.
 

 I.
 
 The Statutory Scheme
 

 Generally, a father’s written consent is required prior to the termination of his parental rights pending adoption.
 
 See
 
 § 63.062(l)(b). However, “[a]n unmarried biological father has an inchoate interest that acquires constitutional protection only when he demonstrates a timely and full commitment to the responsibilities of parenthood.” § 63.022(l)(e), Fla. Stat. (2007). In order to preserve his right to notice and consent to an adoption, an unmarried biological father must comply with the dictates of both section 63.054, Florida Statutes (2007), and section 63.062(2).
 
 Heart of Adoptions, Inc. v. J.A.,
 
 963 So.2d 189, 196 (Fla.2007).
 

 Section 63.054(1) requires an unmarried biological father to file a timely claim of paternity with the Putative Father Registry, which is maintained by the Office of Vital Statistics. Such a claim is timely if the unmarried biological father files it before the filing of a petition for termination of parental rights. § 63.054(1). The Office of Vital Statistics is precluded from recording a claim of paternity filed after the filing date of a petition for termination of parental rights.
 
 Id.
 

 Section 63.062(2) provides that “the consent of an unmarried biological father shall be necessary only if the unmarried biological father has complied with the requirements of this subsection.” Subsection (2)(a) provides requirements for children “placed with adoptive parents more than 6 months after the child’s birth,” and subsection (2)(b) provides requirements for children who are “younger than 6 months of age at the time [they are] placed with the adoptive parents.”
 

 Section 63.062(2)(a)(1) requires an unmarried biological father to
 

 have developed a substantial relationship with the child, taken some measure of responsibility for the child and the child’s future, and demonstrated a full commitment to the responsibilities of parenthood by providing financial support to the child in accordance with the unmarried biological father’s ability, if not prevented from doing so by the per
 
 *1247
 
 son or authorized agency having lawful custody of the child, and either:
 

 a. Regularly visited the child at least monthly, when physically and financially able to do so and when not prevented from doing so by the birth mother or the person or authorized agency having lawful custody of the child; or
 

 b. Maintained regular communication with the child or with the person or agency having the care or custody of the child, when physically or financially unable to visit the child or when not prevented from doing so by the birth mother or person or authorized agency having lawful custody of the child.
 

 Section 63.062(2)(b) contains three requirements. Subsection (2)(b)(l) requires an unmarried biological father to file a claim of paternity form with the Office of Vital Statistics. Subsection (2)(b)(2) requires the unmarried biological father to execute an affidavit
 

 stating that he is personally fully able and willing to take responsibility for the child, setting forth his plans for care of the child, and agreeing to a court order of child support and a contribution to the payment of living and medical expenses incurred for the mother’s pregnancy and the child’s birth in accordance with his ability to pay.
 

 Subsection (2)(b)(3) requires an unmarried biological father who had knowledge of the pregnancy to have “paid a fair and reasonable amount of the expenses incurred in connection with the mother’s pregnancy and the child’s birth in accordance with his financial ability” and if not prevented from doing so by the birth mother or the person or agency having lawful custody.
 

 An unmarried biological father who fails to comply with the requirements of sections 63.054(1) and 63.062(2) waives and surrenders his rights regarding the child. §§ 63.054(1), 63.062(2)(d). Thus, he is not entitled to notice of judicial proceedings regarding the child’s adoption, and he is not required to consent to the child’s adoption.
 
 Id.
 
 However, an unmarried biological father is entitled to notice of the intended adoption plan before his rights can be deemed waived and surrendered.
 
 See
 
 § 63.062(3)(a);
 
 J.A.,
 
 963 So.2d at 199. The notice must specifically inform the unmarried biological father of his obligation to comply with the requirements of sections 63.054 and 63.062(2) and the consequences for failing to comply.
 
 Id.
 

 II.
 
 Timeliness of Notice
 

 We address K.D.’s argument regarding the timeliness of notice first because it is dispositive of this case. K.D. argues that GLA should have provided him notice of his obligation to preserve his rights under sections 63.054 and 63.062(2) before filing the petition for termination of parental rights. K.D. argues that once GLA filed a petition for termination of parental rights, he was no longer able to comply with section 63.054 because section 63.054(1) specifies that a claim of paternity may not be recorded after the date that a petition for termination of parental rights is filed.
 

 The supreme court has made it clear that an unmarried biological father’s parental rights may not be terminated pending adoption unless he was served with notice of the intended adoption plan and failed to comply as directed within thirty days.
 
 J.A.,
 
 963 So.2d at 202. A failure to provide such notice requires reversal of an order terminating the unmarried biological father’s parental rights and remand for an opportunity for the unmarried biological father to comply with sections 63.054 and 63.062(2) after notice is provided.
 
 Id.
 

 In this case, GLA filed the petition for termination of parental rights on April 22, 2008. While K.D. was served with notice
 
 *1248
 
 of the petition to terminate parental rights pending adoption, it was not provided until after the petition was filed. Additionally, K.D. was not served with notice of the intended adoption plan at any time. Accordingly, the circuit court erred in terminating K.D.’s parental rights because GLA did not provide K.D. with timely notice of and opportunity to comply with his obligations under sections 63.054(1) and 63.062(2).
 

 III.
 
 Sufficiency of Notice
 

 Although not necessary to our disposition, we next address K.D.’s argument that the notice of the petition was insufficient to inform him of his obligations under sections 63.054(1) and 63.062(2). K.D. argues that the notice provided by GLA erroneously asserted that he was required to file an affidavit containing a pledge of commitment to N.M. as required by section 63.062(2)(b). It does appear that the notice should not have contained such a provision in this case because section 63.062(2)(b) does not apply.
 

 At the time N.M. was placed with GLA, he was older than six months. Accordingly, the provisions of section 63.062(2)(a) would apply. However, the notice provided in this case contained a requirement set forth solely in subsection (2)(b). This requirement is that the unmarried biological father execute an affidavit
 

 stating that he is personally fully able and willing to take responsibility for the child, setting forth his plans for care of the child, and agreeing to a court order of child support and a contribution to the payment of living and medical expenses incurred for the mother’s pregnancy and the child’s birth in accordance with his ability to pay.
 

 § 63.062(2)(b)(2). This requirement appears to be erroneous as to K.D. because subsection (2)(b)(2) applies when the child is less than six months of age. Subsection (2)(a) does not contain a similar requirement for children who are placed with adoptive parents more than six months after birth.
 

 We recognize that section 63.062(3)(a) requires that a notice “must specifically state that if the unmarried biological father desires to contest the adoption plan, he must file with the court, within 30 days after service, a verified response that contains a pledge of commitment to the child in substantial compliance with subpara-graph (2)(b)2.” However, this provision expressly provides requirements for the notice when subsection (2)(b)(2) applies. In our view, there is no reason to provide notice of the requirements under subsection (2)(b)(2) when the case is governed by the requirements of subsection (2)(a).
 

 IV.
 
 Conclusion
 

 GLA’s failure to provide notice of the intended adoption plan at least thirty days before filing the petition for termination of parental rights requires reversal and renders K.D.’s remaining arguments moot. On remand, K.D. should be served with proper notice and given an opportunity to comply.
 

 Reversed and remanded.
 

 FULMER and NORTHCUTT, JJ., Concur.